**KENNETH E. CURRAN, INC.,**
**Plaintiff, Appellant,**

v.

**Bertha SALVUCCI et al., Defendants,**
**Appellees.**

**No. 7496.**

United States Court of Appeals,
First Circuit.

June 5, 1970.

Alexander J. Kalinski, Manchester, N. H., with whom Joseph J. Walsh,

---

Boston, Mass., was on brief, for appellant.

George W. Gold, Boston, Mass., for appellees.

Before ALDRICH, Chief Judge, COFFIN, Circuit Judge, and BOWNES, District Judge.

BOWNES, District Judge.

This is an appeal from a directed verdict for the defendants at the close of the plaintiff's evidence. The action is based on fraud. The Trial Judge ruled that proof of the allegations in paragraphs 10 and 11 of the complaint was vital to the plaintiff's case, and found that such proof was lacking. We agree with the Trial Court that proof of paragraphs 10 and 11 of the complaint is basic to the plaintiff's case. Thus, we must determine whether the Trial Judge was correct in finding that there was no evidence from which the jury could find the facts alleged in paragraphs 10 and 11.

Paragraphs 10 and 11 provide as follows:

10. Defendants from 1958 through 1961 jointly and severally, as stockholders, officers and directors of Peter Salvucci and Sons, Inc., fraudulently and without right transferred moneys in an amount exceeding one hundred thousand dollars of Peter Salvucci and Sons, Inc., which should have been paid to creditors such as the plaintiff, to Peter Salvucci Equipment Corporation by means of excessive and fraudulent rental charges for equipment rented by Peter Salvucci Equipment Corporation to Peter Salvucci and Sons, Inc.

11. In a manner and by means unknown to plaintiff, defendants transferred all assets of Peter Salvucci Equipment Corporation to themselves as individuals sometime between 1961 and June 10, 1964, when Peter Salvucci Equipment Corporation and Peter Salvucci and Sons, Inc. were dissolved by decree of the Supreme Judicial Court of Massachusetts, thereby wrongfully and fraudulently converting moneys to themselves as individuals which should have been paid to creditors of Peter Salvucci and Sons, Inc. such as plaintiff on the Franconia and Hart's Locations [sic] jobs.

There was no allegation in the complaint and, indeed, no evidence that in the two years in question, 1958 and 1959, the construction corporation was insolvent and, therefore, did not have a right to pay the equipment corporation the fair rental value of the equipment leased from it.

The plaintiff was a subcontractor of a corporation owned and controlled by the individual defendants—Peter Salvucci & Sons, Inc. (hereinafter the construction corporation). At the time that the alleged fraud took place, the construction corporation was engaged in road building for the State of New Hampshire as the prime contractor on several stretches of Interstate Highway in Franconia and Hart's Location, New Hampshire. We, therefore, look to the law of New Hampshire relative to fraud. New Hampshire was one of the first states to adopt the Uniform Fraudulent Conveyance Act. NH RSA ch. 545 (1919). The pertinent provisions of the Act follow:

545:5 *Conveyance, Person in Business.* Every conveyance made *without fair consideration,* when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction, without regard to his actual intent. (Emphasis added.)

Fair consideration is defined in section 3 of the Act as follows:

545:3 *Fair Consideration.* Fair consideration is given for property or obligation:

I. When in exchange for such property or obligation, as a fair equivalent

therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

II. When such property or obligation is received in good faith to secure a present advance of antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.

■ The case law makes it clear that it is not necessary to prove fraudulent conveyances by direct evidence, circumstantial evidence being sufficient. Kelley v. Simoutis, 91 N.H. 407, 20 A.2d 628 (1941); Ricker v. Matthews, 94 N.H. 313, 53 A.2d 196 (1947); Hoyt v. Horst, 105 N.H. 380, 201 A.2d 118 (1964).

Since this was a directed verdict at the close of the plaintiff's case, we must view "the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff." Hoyt v. Horst, *supra*, at 381, 201 A.2d at 118.

■ There was evidence from which the jury could find that, between 1958 and 1961, the defendants owned and controlled a corporation known as Peter Salvucci & Sons, Inc., which was a construction corporation, and another corporation known as Peter Salvucci Equipment Corporation, which owned road building and heavy equipment and leased it to the construction corporation.

It is clear that the plaintiff is owed $30,800 by the construction corporation and that the plaintiff has a judgment for this amount against the construction corporation in New Hampshire. It is also clear that the construction corporation was paid in full for the work that it did for the State of New Hampshire, except for a very small retainage held by the State; and that it was the accepted custom for the construction corporation to pay subcontractors, such as the plaintiff, the amounts due them as payments were received from the State.

There was no direct evidence of the rental charges for equipment rented by the equipment corporation to the construction corporation. We must, therefore, analyze the circumstantial evidence to determine if it is sufficient to sustain the plaintiff's allegations of excessive and fraudulent rental charges.

The jury could find from the Federal Income Tax Returns filed by the construction corporation that it paid $302,296.73 for rental of equipment in the year 1958, and $374,316.90 in 1959, for a total of $676,613.63. The only direct testimony as to how much the construction corporation paid to the equipment corporation in these two years was provided by Peter Salvucci who said $40,000 to $50,000 per year for an approximate total of $100,000. Record at 152–153.

The plaintiff, himself, was allowed to testify as to the total fair rental value of the equipment used on the New Hampshire jobs in 1958 and 1959. Although his testimony in this respect ,is not too clear,[1] it was apparently his opinion that the total fair rental value of the equipment used on the jobs in 1958 and 1959 was $460,000; $285,000 for equipment from the equipment corporation, and $175,000 for equipment from other sources. If we assume that the jury would accept the rental amount shown on the Income Tax Returns as being accurate, and if we also assume that the jury would believe the plaintiff's testimony, then there is a difference of $216,613.63 between the rentals paid ($676,613.63) and the fair rental value of the equipment ($460,000).

While there was conflicting testimony as to how much of the equipment used on the New Hampshire jobs was the equipment corporation's (see testimony of Louis Thompson, Record at 46; and testimony of Peter Salvucci, Record at 122 and 143), the jury could find that "most of the equipment used on the New Hampshire jobs was owned by the equipment corporation." Record at 143. There was also evidence that the

---

1. The cross-examination of the plaintiff revealed that his testimony about fair rental value of the equipment used was based more on guess and conjecture than knowledge of the actual equipment that was being used. Record at 204–224.

 

Salvuccis were working on at least one other job in Massachusetts at the same time that they were working on the New Hampshire jobs. Record at 102.

If all of the equipment used in New Hampshire belonged to the equipment corporation and if all of the rental payments made by the construction corporation were for the rental of equipment on the New Hampshire jobs, then perhaps an inference could be drawn that the equipment corporation received $216,000 in excessive rental payments. The plaintiff's problem of proof is that there is no evidence that all, or even a portion, of the $216,000 went to the equipment corporation or that all, or even a portion of the rental payments were paid for rental of equipment on the New Hampshire jobs.

 This is a gap in the plaintiff's proof that cannot be overcome by a reasonable inference from the facts and circumstances of the case. While the testimony of Peter and Ralph Salvucci was evasive, and even incredible at times, and the conflicting financial statements filed by the construction corporation raise grave doubts as to the credibility of the defendants on any issue, this is not evidence from which the jury could find that excessive rental rates were actually paid by the construction corporation to the equipment corporation; and while, as the Trial Court noted, the smell of "skullduggery" seeps from the testimony and exhibits, the odor alone cannot be made the grounds of a reasonable inference of fraud.

The unsatisfactory character of the defendants' testimony has caused us to examine with particular care for a possible basis, legal and factual, by which plaintiff might be thought to have established a sufficient case to go to the jury. Even with all the indulgence warranted in this type of situation we are unable to find one. In short, there is no evidence from which it can be found or reasonably inferred that the equipment corporation actually obtained monies in excess of the fair rental value of the equipment rented to the construction corporation. The jury could only guess as to what amount was paid to the equipment corporation and what portion of it, if any, was excessive.

Since there is no evidence of excessive and fraudulent rental charges as alleged in paragraph 10, there could have been no fraudulent conversion by the individual defendants as alleged in paragraph 11. Furthermore, we agree with the District Judge that there is no evidence that the individual defendants received any monies from the equipment corporation.

Affirmed.