Merrimack,
No. 4845.

PEARL E. BERRY *v.* STATE.

Argued November 1, 1960.

Decided January 20, 1961.

*Donald G. Rainie, Upton, Sanders & Upton* and *Wesley E. Whitney* (*Mr. Whitney* orally), for the plaintiff.

*Louis C. Wyman*, Attorney General, *Jarlath M. Slattery* and *William J. O'Neil*, Assistant Attorneys General (*Mr. Slattery* orally), for the State.

LAMPRON, J.   The parties agree that plaintiff's damages are to be measured by the difference between the value of her land after the taking and what it would have been worth on the day of the taking had it not occurred.  *Edgcomb Steel Co.* v. *State*, 100 N. H. 480, 486.  To prove her damages the plaintiff offered the testimony of one expert who testified to the value, before and after the taking, of the 30 acre tract located on the east side of the new highway on which are located plaintiff's house and other structures.  Another expert testified to the "before and after" value of the 21 acres taken by the State and of the 70 acre tract of timberland remaining on the west side of the highway.

The State objected to this method of proving plaintiff's damages.  "The obvious objection to the introduction of such evidence is that fractional appraisals will result in false values.  We find it almost impossible to visualize a situation where the value of the timberland would have absolutely no bearing on the farm land and vice versa."

The Trial Court in admitting such evidence stated "I think it has some probative value, as long as you keep in mind it is the sum total value before and the sum total value after."  No contention has been made that the Trial Court did not properly or adequately instruct the jury as to the rule to be followed by them in awarding damages and that the jury did not act accordingly.

It is true that it may be difficult for an appraiser to segregate and ascribe to a part of an entire property a value entirely divorced from the value of the rest of it. However even though in this case the State presented the testimony of an expert concerning the before and after value of the whole property, he admitted that he went over the property "with a man who I consider eminently qualified to evaluate the standing timber." He also agreed "that at least since the taking the only way you can approach the fair value of the land lying west of the Interstate is to treat it as a single unit . . . a timber lot."

Furthermore from a practical viewpoint also it may be more difficult for a jury to deal with fractional appraisals in such a way as to prevent duplication in the amount of damages awarded. However in this case the parts which were separately appraised had such distinct characteristics that the danger of duplication could be found to be at a minimum.

These are all matters to be weighed by the Trial Court in deciding whether the testimony offered will aid the jury in arriving at its decision. *Ricker* v. *Mathews*, 94 N. H. 313, 317; *Edgcomb Steel Co.* v. *State, supra,* 491. We cannot say it was error for the Trial Court to admit such testimony in this case, or that it could not constitute the basis of a fair and just verdict. *Cade* v. *United States*, 213 F. 2d 138 (4th Cir. 1954); *United States* v. *5139.5 Acres of Land*, 200 F. 2d 659, 661 (4th Cir. 1952); *Clark* v. *United States*, 155 F. 2d 157 (8th Cir. 1946).

One Hyde, a qualified appraiser, testified as an expert witness for the State. His opinion of the fair market value of plaintiff's property was arrived at solely by the comparative approach method, that is "a study of similar properties which have sold on the open market in the vicinity." He used four sales of other properties in forming his opinion. Two of these were about 3 to 4 miles west of Straw Road on which plaintiff's property is located. The other two were 2 and 3 miles from Hopkinton Center.

On cross-examination plaintiff brought out dissimilarities between her property and those used by the witness as a basis of comparison. She took the position that he was not qualified to give an opinion on value because "as a matter of law there is no such similarity, as demonstrated in the four most similar properties which he in his testimony has said enabled him and solely enabled him to come to a conclusion as to the Berry property." See *Wood* v. *Insurance Co.*, 89 N. H. 213, 215.

The degree of similarity required between property to be taken and other tracts of land shown in evidence cannot be governed by any fixed rule, but the admissibility of such testimony must in each instance be determined by the trial judge within the proper limits of his discretion. *Coastal Transmission Corp.* v. *Lennox,* (Tex. App.) 331 S. W. 2d 778; *Eames* v. *Corporation,* 85 N. H. 379, 381. In our opinion the properties in question could be found by the Trial Court to have enough elements of comparability to qualify the witness to express an opinion which would aid the jury in their search for the truth. *Danos* v. *Company,* 94 N. H. 200, 201; *Cloutier* v. *Charland,* 100 N. H. 63; *Lustine* v. *State Roads Commission,* 217 Md. 274, 281.

In cross-examination plaintiff asked said Hyde if in arriving at the value of her property he had considered certain lots on said Straw Road sold during a certain period. Receiving a negative reply, she was permitted, over the State's objections, to introduce in evidence certified copies of deeds of certain tracts of land on said road conveyed during that period and to question the witness about the amount of revenue stamps thereon. Plaintiff's counsel was also allowed to state to the jury the federal law (72 Stat. 1299) regulating the determination of the amount of tax on such conveyances represented by the revenue stamps.

The State maintains that proof of the consideration paid for certain parcels of land by evidence of the amount of revenue stamps on the deeds was hearsay the receipt of which constituted prejudicial error. It does not dispute the fact that an expert witness may testify that he has formed his opinion on the basis of hearsay evidence because he gives it the sanction of his general experience. "Nevertheless, the actual selling price of [a] tract of comparable property could not be shown by hearsay evidence." 38 Neb. L. Rev. 495, 500; *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257; *Ellis* v. *Ohio Turnpike Commission,* 100 Ohio App. 10.

Plaintiff contends that she was entitled to present evidence of these sales for the purpose of testing the extent of witness Hyde's knowledge and the basis of his conclusions. She maintains that in order to determine the prices paid for these conveyances reference could be had to the revenue stamps if the Trial Court considered such evidence of sufficient probative value to warrant its admission. *Bill* v. *Company,* 90 N. H. 453, 456; *Hebert* v. *Railroad,* 90 N. H. 324, 327.

It has been held that the presence of revenue stamps on a deed creates a presumption that consideration was given in an amount represented by the stamps. *Flynn* v. *Palmer,* 270 Wis. 43; *In re McGeehin's Will,* (Sur. Ct.) 235 N. Y. Supp. 477, 479. See anno. 51 A. L. R. 2d 1000. If these deeds had conveyed properties which the witness Hyde used as comparables in forming his opinion of the value of plaintiff's premises or if he had given his opinion of the value of these properties, the Trial Court could have allowed the introduction of evidence of the amount of revenue stamps on such deeds to test the basis of the conclusions of the witness and the weight to be given to them. *Bill* v. *Company, supra;* see *United States* v. *5139.5 Acres of Land, supra,* 661; 5 Nichols, Eminent Domain (3d *ed.*) s. 18.45 [2].

However these properties were not considered by this witness in forming his opinion nor did he testify as to their values. These deeds were offered, among other purposes, to demonstrate "that the consideration paid for the various parcels of land conveyed, as denoted by the revenue stamps, was not in line with the minimal damages which Mr. Hyde testified the plaintiff had suffered." This was not a proper manner of proving the amount of consideration paid for these conveyances. It should have been proved by the testimony of one having personal knowledge thereof. *Kimball* v. *Fenner,* 12 N. H. 248, 251; *Horn* v. *Thompson,* 31 N. H. 562, 570; *Spaulding* v. *Knight,* 116 Mass. 148, 155; *Denver* v. *Quick,* 108 Col. 111, 117; see *United States* v. *Katz,* 213 F. 2d 799, 800 (1st Cir. 1954). The admission of this evidence constituted error which may have prejudicially affected the verdict. There must be a new trial. *Daniels* v. *Barker,* 89 N. H. 416, 421.

Plaintiff's expert witness Ordway testified to the "before and after" value of the 30 acre tract on the east side of the highway on which her home is located. He testified on cross-examination that he observed the dwelling had a central heating system but did not know if it was installed before or after the taking in May 1957. Plaintiff over the State's objection, was allowed to introduce evidence of the cost of said system which was installed after the taking.

The State maintains correctly that plaintiff's damage is measured as of the day of the taking and that evidence of improvements made to the property thereafter are usually immaterial and incompetent. However where there was an issue in this case as to when the system was installed and how it might have affected the

conclusions of the expert witness and where it most likely had also been observed by the jury on its view of the premises we cannot say that the State was prejudiced by admission of evidence of the cost of this heating plant. See *Chouinard* v. *Shaw,* **99** N. H. **26, 28.**

*New trial.*

All concurred.